SO ORDERED: September 30, 2019.



_____
**James M. Carr**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VANESSA ROCHELLE BECKLEY, | ) | Case No. 17-04770-JMC-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STATE OF INDIANA on the relation of the | ) | |
| INDIANA DEPARTMENT OF | ) | |
| WORKFORCE DEVELOPMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 17-50252 |
| | ) | |
| VANESSA ROCHELLE BECKLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS PROCEEDING came before the Court for a bench trial on December 17, 2018 (the "Trial"). Plaintiff State of Indiana on the relation of the Indiana Department of Workforce Development ("DWD") appeared by counsel Amanda K. Quick. Defendant Vanessa Rochelle Beckley ("Beckley") appeared by counsel Thomas Scherer. At the conclusion of the Trial, the

Court took the proceeding under advisement and invited the parties to submit post-trial briefs specifically addressing the dischargeability of the penalty portion of the Debts (as defined below), as discussed on the record at the Trial.

The Court, having reviewed the evidence presented at the Trial, *Plaintiff's Pre-Trial Brief* filed by DWD on July 20, 2018 (Docket No. 30) (the "Brief"), *Plaintiff's Post-Trial Brief* filed by DWD on January 16, 2019 (Docket No. 38), *Defendant's Post-Trial Brief* filed by Beckley on January 30, 2019 (Docket No. 39), the *Notice of Authority* filed by DWD on May 1, 2019 (Docket No. 40), and the other matters of record in this adversary proceeding; having weighed the credibility of the witnesses; having heard the presentations of counsel at the Trial; and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

## **Findings of Fact**

The Court makes the following findings of fact:

1. On June 26, 2017, Beckley filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[1] in this Court.

2. On October 13, 2017, DWD filed the *Complaint to Determine Dischargeability of Debt* (Docket No. 1), wherein DWD alleges that Beckley owes debts (the "Debts") to DWD that are nondischargeable under §§ 523(a)(2)(A) and (a)(7).

3. On October 17, 2017, Beckley received her general bankruptcy discharge.

4. Beckley worked for ADT Security ("ADT") until she was laid off on or about December 8, 2009.

---

[1] All statutory references herein are to the Bankruptcy Code unless otherwise noted.

5.	Up until the date when Beckley was laid off from ADT, Beckley's only exposure to the process of applying for unemployment benefits dated back to 2006. In 2006, an application for unemployment benefits was submitted to DWD on paper. However, when Beckley lost her job at ADT in 2009, the process of applying to DWD for unemployment benefits had become an online process. When Beckley was laid off from ADT, she had neither a computer nor access to the internet to initiate the online process of applying for unemployment benefits. Beckley sought the assistance of Angela Smith ("Smith"), who had a computer and access to the internet. Smith formerly worked for DWD. At the time Beckley sought Smith's assistance, Smith was helping others navigate the process of applying for unemployment benefits. Beckley voluntarily provided to Smith Beckley's social security number, birth date, and other personal identifying information needed for Smith to file the initial application for unemployment benefits and all weekly claims on behalf of Beckley.

6.	DWD's employee-investigator, Holli Clapp ("Clapp"), credibly testified about DWD's online application and claim-submission processes. DWD provides various warnings and certifications as part of its online process for an individual to complete the initial application for unemployment benefits (*see* Ex. 2). Those warnings and certifications include (a) warnings about what earnings must be reported ("all earnings … including … part-time employment [and] temporary employment"); (b) warnings about an applicant's responsibility for protecting his/her password and for the results of another person's claiming benefits using such applicant's password; (c) warnings about the consequences of making false statements or failing to provide required information; and (d) certifications that the applicant understands s/he is required to read the *Unemployment Insurance Claimant Handbook* (the "Handbook") (*see* Ex. 3). Beckley credibly testified that she did not see these warnings or certifications because Smith completed

the initial application on Beckley's behalf.  Beckley also admitted that she did not read the Handbook.

7.  Each weekly claim for unemployment benefits was submitted to DWD by way of a voucher (a "Voucher").  Various certifications are part of the online process that DWD created when an individual completes and submits a Voucher (*see* Ex. 5).  Those certifications include (a) the applicant has "reported any and all work, earnings, and self-employment activity"; (b) "all answers and information given … are true and accurate"; and (c) the applicant is "aware that if I knowingly fail to disclose information or give false statements to receive unemployment benefits, I may lose my unemployment benefits, be required to repay benefits received improperly with interest and penalty …" .  Clapp testified that, as far as DWD knows, Beckley submitted each Voucher.  Beckley credibly testified that every Voucher seeking benefits for Beckley was submitted by Smith and that Beckley did not see or make these certifications.

8.  As part of the online process by which Smith filed each of Beckley's Vouchers, the DWD website asked the question "*Did you work?*", referring to a week for which benefits were requested.  Smith replied "No" on each of the 51 Vouchers (*see* Ex. 4) that Smith submitted on behalf of Beckley that are relevant to this proceeding.  At the time each of those 51 Vouchers was submitted, Beckley was employed on a temporary and/or part-time basis.[2]

9.  Around May 31, 2011, Beckley was able to secure temporary/part-time employment at Centene Management Company ("Centene").  Beckley advised Smith of her new employment status.  Beckley credibly testified that Smith responded that Beckley was eligible to receive unemployment benefits as long as the Centene job remained temporary/part-time.  In

---

[2] At times, the record is contradictory as among "temporary" employment, "part-time" employment, or "temporary part-time" employment.  The Court could not reconcile this discrepancy in each instance other than to find that Beckley's employment during the Relevant Period (as defined below) was not full-time.  The Court need go no further as the distinction between "temporary" and "part-time" is not material to the Court's decision.

reliance on Smith's assurance of eligibility, Beckley allowed Smith to continue submitting Vouchers on her behalf, notwithstanding her temporary/part-time employment at Centene.

    10.    Beckley credibly testified that, while she was working for Centene, DWD sent her by mail some unemployment-related forms to complete. Beckley consulted with Smith about the forms. Smith advised Beckley to complete the forms accurately and that, if Beckley was still eligible for unemployment benefits, another Voucher would "come available" the following Sunday. Beckley further testified that she completed and submitted the forms and therein (1) disclosed to DWD that she was employed by Centene on a temporary/part-time basis; and (2) provided supporting documentation with respect to the wages that she was earning from Centene.[3] After Beckley made that disclosure, DWD continued to make Vouchers available to Beckley and Beckley continued to receive unemployment benefits, which reinforced to Beckley the accuracy of Smith's representation that temporary/part-time employment did not disqualify Beckley from receiving unemployment benefits. Smith continued to submit Vouchers on Beckley's behalf.

    11.    On October 15, 2014, DWD sent to Beckley a letter (*see* Ex. 12) prepared by Clapp. Clapp's letter alerted Beckley, apparently for the first time, that DWD had information that Beckley may have received unemployment benefits to which she was not entitled because Beckley "may have failed to properly disclose her employment and earnings" for various weeks ending between August 21, 2010 and September 24, 2011 (the "Relevant Period") with four different employers, including Centene, Adecco USA Inc., Kelly Services Inc. and Premier

---

[3] These forms were not presented for admission into evidence at the Trial.

Credit of North America (collectively, the "Employers").[4] In that letter, DWD asked for Beckley's response in a sworn statement using the form enclosed with the letter.

12. On or about October 31, 2014, Beckley submitted a responsive sworn statement to DWD (*see* Ex. 13). In response to the question, "Why did you fail to properly report your earnings from CENTENE MANAGEMENT COMPANY LLC when you claimed benefits during weeks ending 6/4/11-9/24/11?", Beckley responded "I did. Unemployment sent me some forms. I advised I was part time & the wages I was earning. When my voucher was still available, I thought I could still file because I was part time." (*see* Ex. 13, Q. 21, p. 5). In response to the same question regarding the other three Employers, Beckley answered "Because it was temporary", "someone filed online for me" and/or "not sure" (*see* Ex. 13, Qs. 17, 18 and 20, pp. 4-5). Beckley's written response to DWD in 2014 is consistent with her testimony at the Trial (*see* ¶¶ 9-10 above). At all times during the Relevant Period, Beckley's employment and earnings were on a temporary/part-time basis.

13. On November 17, 2014, DWD sent to Beckley three "determinations" (*see* Ex. 14) prepared by Clapp notifying Beckley that DWD had concluded that Beckley "knowingly failed to disclose, or falsified material facts" in the Vouchers based on Beckley's failure to disclose that she was employed by and receiving wages from the Employers during the Relevant Period. Such determinations also notified Beckley of her right to appeal from that conclusion.[5]

---

[4] The letter also references employer ADT Security Services Inc., but such employer is not listed in the "Investigator's Case History" referenced in and attached to such letter.

[5] Beckley did not appeal DWD's determinations.

14. DWD asserts that the amount of the Debts that Beckley owes to DWD is $32,246.60[6] (*see* Ex. 1), which consists of the amount of the overpayments ($19,023), interest ($2,236.08) plus penalties ($11,119.50), less any payments or offsets ($131.98).

15. DWD presented no evidence to counter Beckley's testimony that (1) Beckley did not review DWD's website prior to the submission of any Voucher; (2) Beckley was unaware of the precise content of the Vouchers submitted by Smith on her behalf; and (3) Beckley did not intend to make any false representation to DWD or otherwise defraud DWD with respect to the submission of any Voucher.

16. Beckley testified that when her employment status changed from temporary/part-time to full-time status around September-October 2011, she told Smith that she no longer needed to apply for unemployment benefits. Smith stopped submitting Vouchers on behalf of Beckley.

17. The Court finds that Beckley's testimony was credible and worthy of belief.

## Conclusions of Law

1. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

4. Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[6] This amount is inconsistent with the totals listed on Exs. 16 and 17. The Court takes judicial notice of DWD's proof of claim filed in Debtor's bankruptcy case to reconcile the differences and believes, based on the proof of claim and Clapp's explanations at the Trial of her handwritten notations on Exs. 16 and 17, that the amount in the affidavit admitted as Ex. 1, though it omits a precise figure for the interest that has accrued, is the accurate amount of the Debts.

5. Exceptions to discharge under § 523 "are to be [construed] strictly against a creditor and liberally in favor of the debtor." *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). "The burden is on the objecting creditor to prove exceptions to discharge." *Id.* (citation omitted). The burden of proof required is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

6. In the Brief, DWD asserts that the issues before the Court are:

1. Whether [DWD's] claim for the fraudulent overpayment of unemployment benefits and pre-petition interest is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)?

2. Whether the civil penalties associated with [DWD's] claim for overpayment of unemployment benefits are excepted from discharge pursuant to 11 U.S.C. § 523(a)(7)?

*Issue #1 - § 523(a)(2)(A)*

7. Section 523(a) provides, in relevant part:

A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
…
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
  (A) false pretenses, a false representation, or actual fraud … .

8. The Seventh Circuit Court of Appeals distinguishes material differences among the three possible grounds for nondischargeability under § 523(a)(2)(A) and has formulated two different tests, one for both "false pretenses" and "false representation" and another for "actual fraud." *See Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 699-700 (Bankr. N.D. Ill. 2002) (citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000)).

9. To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theory, a creditor must prove all of the following elements: "(1) the debtor made

a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

10. "What constitutes 'false pretenses' in the context of § 523(a)(2)(A) has been defined as 'implied misrepresentations or conduct intended to create and foster a false impression.'" *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 959 (Bankr. N.D. Ill. 1995) (quotations omitted)). "False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* at 928 (citation omitted).

11. A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement or conduct. *Deady v. Hanson (In re Hanson),* 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010) (citing *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001)). "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Id.* (citing *Trizna & Lepri v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). "An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact." *Scarpello*, 272 B.R. at 700 (citing *Jairath*, 259 B.R. at 314).

12. Justifiable reliance is an intermediate level of reliance which is less stringent than "reasonable reliance" but more stringent than "reliance in fact." *See Field v. Mans*, 516 U.S. 59, 72-73, 116 S.Ct. 437, 445, 133 L.Ed.2d 351 (1995). Justifiable reliance requires only that the

creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation" and imposes no duty on the creditor to investigate unless the falsity of the representation is readily apparent. *Id.* at 71 (quotations omitted). Justifiable reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id.* (quotation omitted).

13. "Scienter, or intent to deceive, is … a required element under § 523(a)(2)(A) whether the claim is for a false representation, false pretenses, or actual fraud." *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 495 (Bankr. N.D. Ill. 2016) (citation omitted).

14. A debtor's intent to deceive for purposes of the false pretenses and false representation prongs on § 523(a)(2)(A) "is measured by a debtor's subjective intention at the time the representation was made." *Scarpello*, 272 B.R. at 700 (citing *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998)). "Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances." *Hanson*, 432 B.R. at 773 (internal citations omitted).

15. "[A]ctual fraud is broader than misrepresentation", *McClellan*, 217 F.3d at 893, in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability for "actual fraud." *Scarpello*, 272 B.R. at 700 (citing *McClellan*, 217 F.3d at 894). "Actual fraud" is defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (quotations omitted). *See also Husky Int'l Elec., Inc. v. Ritz*, -- U.S. --, 136 S.Ct. 1581, 1586, 194 L.Ed.2d 655 (2016) ("The word 'actual' has a simple meaning in the context of

common-law fraud:  It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'") (quotation omitted).  In such cases, a creditor must prove "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute."  *Hanson*, 432 B.R. at 772 (citing *McClellan*, 217 F.3d at 894).

16. "[T]he focus of an 'actual fraud' claim is on the defendant's state of mind at the time of his purportedly fraudulent conduct."  *Merritt v. Wiszniewski (In re Wiszniewski)*, 2010 WL 3488960 at *5 (Bankr. N.D. Ill. 2010) (citation omitted).

17. The Court concludes that DWD failed to sustain its burden of proof that Beckley obtained unemployment benefits by "false pretenses, a false representation, or actual fraud" in connection with the Vouchers submitted to DWD.  Instead, as detailed above in the findings of fact, the Vouchers were submitted not by Beckley but by Smith.  Smith provided Beckley with advice and guidance concerning Beckley's eligibility for unemployment benefits and the process of applying for such benefits.  Beckley knew and understood Smith to be a former DWD employee.  Beckley accurately described to Smith her temporary/part-time employment status in connection with the Vouchers.  The Vouchers were submitted by Smith on Beckley's behalf, based upon Smith's direction and advice that Beckley's temporary/part-time employment did not disqualify Beckley from receiving the unemployment benefits that were subjects of the Vouchers.  Beckley directed Smith to stop submitting Vouchers as soon as her employment status changed to full-time, and Smith complied.  As such, the Court finds as a fact and concludes as a matter of law that Beckley did not intend to defraud DWD.  DWD failed to prove by a preponderance of the evidence that Beckley acted with the state of mind or scienter required by § 523(a)(2)(A).

*Issue #2 - § 523(a)(7)*

18.     A debt is not dischargeable pursuant to § 523(a)(7) "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss".  The Court notes that there is no intent element in determining whether a penalty is excepted from discharge pursuant to § 523(a)(7).

19.     As noted on the record at the end of the Trial, the Court was grappling with whether it can and/or should go behind DWD's penalty assessments to determine the propriety thereof.  In past opinions, the Court has refrained from doing so, understanding that the penalties were imposed within Indiana's statutory framework (*see* Ind. Code § 22-4-13-1.1), and that penalty determinations were to be challenged through the appeal process established by Indiana statute (*see, e.g.,* Ind. Code §§ 22-4-17-2(f), -3, -5, -11).  The Court has taken quite a bit of time to consider the arguments of counsel made at the Trial and in their respective post-trial briefs and the case law on this issue.  The Court appreciates the parties' efforts and patience in these regards.

20.     The Court concludes that it will not and should not go behind DWD's penalty assessments.  The Court agrees with Judge Grant that "the elements Congress established for non-dischargeability in § 523(a)(7) … focus only upon characteristics of the debt itself.  … They do not involve, ask the bankruptcy court to pass upon, or require the creditor to prove the underlying misconduct that led to the imposition of the penalty." *Matter of Loy*, 584 B.R. 302, 303-04 (Bankr. N.D. Ind. 2018).  *See also Indiana v. Brown (In re Brown)*, 2019 WL 1746279 at *4 (N.D. Ind. April 17, 2019) ("Determining whether a debt meets the elements of § 523(a)(7) does not require relitigating whether the debt should have been imposed in the first place.");[7]

---

[7]     In the *Brown* case, Ms. Brown appealed the investigator's determination that Ms. Brown knowingly failed to disclose or falsified material facts; an administrative law judge ("ALJ") held a hearing and affirmed the

*Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 360, 93 L.Ed.2d 216 (1986) ("The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States.") (in the context of restitution imposed in state criminal proceedings).

21. Therefore, the fact that the Debts contain penalties payable to and for the benefit of DWD, a governmental unit, which are not compensation for actual pecuniary loss[8] is sufficient to satisfy § 523(a)(7). The Court concludes that the penalty portion of the Debts is excepted from discharge pursuant to § 523(a)(7).

### *Decision*

For the reasons set forth above:

(A) The non-penalty portion of the Debts is not excepted from discharge pursuant to § 523(a)(2)(A) and is therefore dischargeable pursuant to § 727(a); and

(B) The penalty portion of the Debts in the amount of $11,119.50 less any payments or offsets received and allocated to such amount is excepted from discharge pursuant to § 523(a)(7) and is therefore not dischargeable pursuant to § 727(a).

---

investigator's determination; and, upon further appeal, the Unemployment Insurance Review Board (the "Board") affirmed the ALJ's decision. Ms. Brown had the right to appeal the Board's decision to the Indiana Court of Appeals but did not do so. *Brown*, 2019 WL 1746279 at *1. Even though Ms. Brown appears to have exhausted her administrative remedies, Judge DeGuilio did not expressly invoke the principles of *res judicata* or collateral estoppel in his ruling. This Court will not either. However, Debtor's counsel pointed out at the Trial the potential for confusion with regard to Debtor's appeal rights – the three determinations dated 11/17/2014 (*see* Ex. 14) expressly advise Debtor of her right to appeal, but the overpayment notice (*see* Ex. 15) dated and mailed to Debtor the following day states "You cannot appeal this document." The Court agrees that confusion could be created, but regardless of whether the penalty assessment became final when it was not appealed or as a result of an appeal, the penalty assessed against Debtor is final under state law, so the Court will not disturb DWD's penalty assessment.

[8] The Court agrees with Judge DeGuilio's analysis in *Brown* that the penalty assessed by DWD against Debtor is in fact a "penalty" and is payable to and for the benefit of DWD. *See Brown*, 2019 WL 1746279 at *4-6.

The Court will enter judgment consistent with these findings of fact and conclusions of law contemporaneously herewith.

# # #